**Lawrence JACKSON et al., Appellants,**

**v.**

**The FLEMING CO., INC., et al., Appellees.**

**No. 677.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Nov. 1, 1972.

Rehearing Denied Nov. 29, 1972.

Bob Heath, Robert Hyatt, III, Houston, for appellants.

Tom M. Davis, Jr., D. B. McFall, Butler, Binion, Rice, Cook & Knapp, Walter E. Workman, Baker & Botts, Donald Hallmark, Boswell, O'Toole, Davis & Pickering, Houston, for appellees.

TUNKS, Chief Justice.

This suit arose from a four-vehicle collision on the one-way, two lane feeder road paralleling the Gulf Freeway in Harris County, Texas. Lawrence Jackson and Restaurant Management Consultants & Analysts, Inc., Jackson's employer and the owner of the vehicle driven by Jackson, were the plaintiffs. Jackson sued for personal injuries and the corporate plaintiff sued for damages to its vehicle. Texas Employers' Insurance Association intervened to recover workmen's compensation benefits it had paid Jackson. The defendants were The Fleming Co., Inc., its employee driver, Pearley Jones, Jr., and Dennis Lee Barhorst.

The collision occurred when Barhorst stopped the vehicle being driven by him. Barhorst stopped in the right-hand traffic lane to pick up a hitchhiker. A truck stopped behind Barhorst. Jackson stopped behind the truck. The vehicle driven by Jones collided with the rear of Jackson's vehicle.

The case was tried to a jury. The jury found both Jones and Barhorst guilty of primary negligence which caused the collision. It also found that Jackson was

guilty of contributory negligence causing the collision. It found Jackson's damages to be in the amount of about $33,000 and the damage to the vehicle driven by Jackson to be $850. It was stipulated that Texas Employers' had paid Jackson $9,035.05 in workmen's compensation benefits.

The trial court rendered judgment that the plaintiffs and intervenor take nothing against the defendants Fleming Co. and Jones. During the trial and before verdict Barhorst paid into the registry of the court, under circumstances hereinafter discussed, the sum of $10,000. The trial court's judgment awarded that fund to the plaintiff, Jackson and the intervenor, Texas Employers' in full satisfaction of their cause of action against Barhorst.

Jackson and Restaurant Management have appealed without limiting the scope of their appeal, as they might have done under Tex.R.Civ.P. 353(c). In their brief, however, it is stated that Jackson does not complain of that portion of the trial court's judgment relating to the cause of action against Barhorst. In the prayer to appellants' brief it is prayed that the judgment as to Barhorst be affirmed and that only the judgment as to Jones and The Fleming Co. be reversed and remanded. Barhorst in his brief states cross-points on the basis of which he seeks reversal of that portion of the trial court's judgment awarding to Jackson and the intervenor the $10,000 which Barhorst paid into Court. The brief of Jones and The Fleming Co. asks for affirmance of that portion of the judgment relating to them. Texas Employers' Insurance Association has not appeared in this appeal. No party challenges the evidentiary support for the jury's findings of fact.

The sole basis upon which the appellants, Jackson and Restaurant Management Consultants & Analysts, Inc., seek reversal is the alleged error of the trial court in admitting, over their objection, testimony that Jackson had received workmen's compensation benefits for injuries he sustained in the accident. In that connection, the circumstances under which such testimony was admitted are relevant.

Jackson's direct examination began on Friday, December 10, 1971. During such direct examination he was asked about and testified about the benefits he received as an employee of Restaurant Management. He testified that in addition to his salary he was furnished uniforms, meals and a vehicle to drive to and from his home. He was then interrogated and answered as follows:

"Q Was there anything else furnished to you now besides your food, your uniforms and taking this truck home at night?

A No, sir.

Q That's about it?

A Yes, sir."

Part of the cross-examination of Jackson was conducted on that same day, but it had not been finished when the court recessed. In that part of the cross-examination there were no questions concerning workmen's compensation benefits.

On Monday, December 13th, when the trial resumed other witnesses were called before the cross-examination of Jackson was continued. One such witness was Mr. Harry L. Chambers, President of Restaurant Management, who was called by the plaintiffs. In answer to a question by plaintiffs' attorney as to what Jackson was making at the time of his injury the witness replied:

"His salary was in the neighborhood of eighty, $90 a week, plus there was some other benefits, too."

The witness was then asked, by plaintiffs' attorney "Was there anything else that you furnished him now besides food and money?" He told about the uniforms, the meals and the use of the company truck. He also told about paid vacations and an annual Christmas bonus.

This testimony must be considered in the light of other testimony by the plaintiffs. Jackson testified that he was discharged from the hospital to which he was first taken after the accident after examination but without any treatment in spite of his rather severe injuries. On such discharge he was taken to his home by a fellow employee. He stopped on the way home to get medicine for his pain. When he did not show up for work the next day his employer became concerned and sent someone to investigate. It was only after that that he was sent to a doctor and placed in a hospital for treatment.

Such was the state of the record when counsel for the defendants, Jones and The Fleming Co., began the cross-examination of Chambers. (Jackson had not yet been recalled to the stand.) After interrogation as to other matters the defendants' attorney asked to take up a point with the court. A conference was held at the bench. The record does not show what was said in that conference. After the conference the defendants' attorney began interrogating Mr. Chambers about Jackson's workmen's compensation coverage. That line of interrogation continued for three and a half pages of the Statement of Facts without any objection by plaintiffs —so far as the record shows. When plaintiffs' attorney did object to a question as to the amount of compensation payments Jackson received, the objection was on the ground that the witness did not know of his own knowledge. The court, in effect, sustained the objection by telling the witness to confine his testimony to facts within his own knowledge. When the witness was then asked if he knew the extent of such benefits plaintiffs' attorney objected on the grounds that such evidence was "irrelevant, immaterial and is not any evidence for an ultimate fact issue . . . ". Later it developed that the witness did know what benefits had been paid and thus the question to which plaintiffs objected was not answered.

On December 15th the plaintiff, Jackson, was again called to the stand and counsel for Jones and The Fleming Co. resumed his cross-examination. Jackson was asked about his workmen's compensation benefits. Plaintiffs' attorney objected because such testimony was irrelevant and prejudicial. The court overruled. For the first time plaintiffs moved for a mistrial. That motion was overruled. There has been filed in this appeal only a partial Statement of Facts consisting of only the testimony of Jackson and Chambers. There was, however, a stipulation that such partial statement of facts constituted all of the testimony concerning workmen's compensation benefits.

■ There are several bases upon which the appellants' points of error relating to the admission of testimony as to workmen's compensation benefits must be overruled. The interrogation of Chambers as to such was conducted after an unreported conference at the bench. Almost all of it occurred before any objection was made. By their failure to make timely objection the plaintiffs impliedly waived objection to the testimony. Any testimony thereafter received on the subject over objection was cumulative and its receipt did not constitute reversible error. 1 C. McCormick & R. Ray, Texas Evidence, secs. 23 & 27 (2d ed. 1956) and cases there cited.

■ As noted above, only a partial statement of facts was filed in this appeal. It consists only of the testimony given by Jackson and by Chambers. The record shows that the testimony began on December 9 and ended on December 16. The parties stipulated that the testimony of Jackson and Chambers was all of the testimony concerning Jackson's workmen's compensation benefits, but obviously there was other evidence relevant to the issues of liability and damages. The admission of evidence as to insurance coverage of a party to a personal injury case does not always require a reversal of the judgment

rendered therein. This is true even where the insurance coverage as to which evidence is admitted relates to the liability for the accident which is the subject of the suit. In order for the appellant to be entitled to a reversal for such error he must show that the admission of the evidence probably caused the rendition of an improper judgment. The determination of whether the error probably caused the rendition of an improper judgment ordinarily requires a consideration of all of the evidence upon the controlling issues in the case. Since this record does not include all of the evidence it does not show that the complained of testimony probably caused the rendition of an improper judgment. Dennis v. Hulse, 362 S.W.2d 308 (Tex.Sup.1962) and see Englander Co. v. Kennedy, 428 S.W.2d 806 (Tex.Sup.1968).

The other part of this appeal concerns the $10,000 paid into court in behalf of the defendant, Barhorst, by his liability insurance carrier. That sum represented the limit of the carrier's liability under the policy. On the afternoon of December 15, 1971, after several days of testimony had been heard counsel for Barhorst made a "tender" of such sum into the registry of the court "for the use and benefit of the intervenor and the plaintiff (Jackson), to be divided in such way as they may agree and as the law dictates." Although the payment was characterized as a tender, counsel also said, "This is an unconditional good faith offer to settle . . ." and recited that Barhorst's insurer did not admit liability.

The making of the tender or offer occurred in the judge's chambers. The judge, the court reporter and attorneys for all parties except the intervenor were present. The court reporter recorded the conversation and his record thereof is included in the transcript, covering 30 pages. The parties have stipulated that such report constitutes the full and complete testimony as to the matter. The motives of the various parties as shown by the language used by their lawyers is not entirely clear.

It appears, however, that Barhorst's lawyer was trying to avoid the possibility that Barhorst's insurance carrier might become liable for a judgment which exceeded its policy limits. The lawyer for Jones and The Fleming Co. was trying to develop facts which might show that Barhorst had settled with a co-defendant and Barhorst's lawyer was trying to avoid such development.

During the course of the proceeding in the judge's chambers the following exchange occurred:

"MR. WORKMAN: (attorney for Fleming Co. and Jones) Is it my understanding that this offer is a continuing offer, that is, after the verdict is in and judgment is rendered that regardless of what the liability findings may be that the plaintiff at his option and election may accept the sum of $10,000 in discharge of the liability of Dennis Lee Barhorst?

MR. DAVIS: (attorney for Barhorst) That is correct, with the proviso that by this offer this is not an admission of liability.

. MR. WORKMAN: But they can take it even if you pour them out on contributory negligence or anything else.

MR. DAVIS: It's an unconditional offer in that sense, yes."

Again, during such proceeding:

"THE COURT: We haven't covered in that statement one essential item that I understood you to say earlier, that this is an unconditional tender regardless of the outcome of this suit and that this money will be divided between the intervenor and the plaintiff regardless of the outcome of this lawsuit.

MR. DAVIS: Yes, sir, as the law will dictate.

THE COURT: Regardless of the outcome of this lawsuit, and specifically even though the plaintiff in this lawsuit

may be found by the jury to be contributorily negligent to the extent that such negligence was a proximate cause of the occurrence in question, the $10,000 will still be available to the plaintiff and the intervenor under the terms of this unconditional tender. Is that what you are intending by your tender into this court?

MR. DAVIS: Yes, sir, it is an unconditional tender."

While the parties stipulated that the court reporter's transcription of the in chambers proceeding was all of the testimony on the subject, there is another relevant item in the record. The transcript includes the following:

### "MOTION TO DEPOSIT FUNDS INTO REGISTRY OF COURT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now DENNIS LEE BARHORST, defendant, and requests this Court to deposit the sum of TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) into the Registry as per this defendant's tender which was dictated into the record on November 15, 1971, and this defendant requests that this money be divided among the plaintiff, Lawrence Jackson, and the intervenor, Texas Employers' Insurance Association, through further order of this Court.

WHEREFORE, this defendant requests this motion be in all things granted."

(It is assumed that the November 15, 1971, is error and that December 15, 1971 was intended.) Pursuant to that motion the judge entered the following order:

### "ORDER

It is ORDERED that the clerk receive such deposit subject to further order of this court."

After the verdict, wherein Jackson was found to have been contributorily negligent, Barhorst's attorney moved to withdraw the $10,000 paid into court. The motion was denied. Rather, the trial court rendered judgment that Jackson and the intervenor recover that money in full satisfaction of their claim against Barhorst. By cross-points set forth in his brief by Barhorst, wherein he designates himself as appellee, he asks the reversal of that portion of the judgment awarding the $10,000 to plaintiff and intervenor. Those cross-points are overruled.

The contention of Barhorst's attorney that the deposited money should be returned to him because the jury found contributory negligence is clearly in conflict with the representations that he made to the court and the other lawyers in the case. It was on the basis of such representations that he was asked and obtained leave of court to pay the money into the registry. It was under those representations that the remainder of the trial was conducted. Barhorst's insurer, by depositing the money to be paid to the plaintiff and intervenor regardless of the verdict, gained a potential advantage in that it avoided possible liability for interest on a judgment for more than its policy limits. See Plasky v. Gulf Insurance Company, 160 Tex. 612, 335 S.W.2d 581 (1960). It is of interest that Barhorst's insurer is Gulf Insurance Company. It is true that Jackson's lawyer never specifically recited an acceptance of the $10,000 in satisfaction of Barhorst's liability, but he effectively did so. He recites in his appellants' brief that he does not complain of that portion of the judgment relating to his cause of action against Barhorst. The intervenor, too, has effectively accepted the tender because it has not appealed from the judgment by which the deposited sum is awarded in discharge of the suit against Barhorst. Jackson's prayer asks that there be a reversal only as to the judgment in favor of Jones and The Fleming Co. When the money was tendered it was recited to Jackson and

the court that the tender was to remain effective even after a verdict adverse to Jackson. Under those circumstances we are of the opinion Barhorst's insurance carrier was bound to leave the tender effective until the judgment became final and not subject to further appeal. It was not such a final judgment when Jackson, in effect, accepted it in satisfaction of his claim against Barhorst.

The judgment of the trial court is affirmed. One-half of the costs of appeal are assessed against the appellant, Jackson, and one-half of such costs are assessed against the appellee, Barhorst.